## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JOHN LARANCUENT, on behalf of himself and all others similarly situated,

       Plaintiff,

v.

CHECKPEOPLE, LLC and INFORMATION.COM LLC,

       Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff John Larancuent ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendants Checkpeople, LLC ("Checkpeople") and Information.com LLC ("Information.com") (collectively, "Defendants").  Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1.     On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open.  *See also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

directory, without permission.[2]  *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2.      This prohibition is designed to protect privacy.  As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3.      Indeed, concern over cell phone privacy is widespread.  According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish

---

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461.  *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[4] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

to restrict access to their cell phone number to family and friends.[8]

4.      The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information.  This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5.      Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a)    On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
>    (I)    Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6.      Despite this abundantly clear proscription, Defendants have listed the cellular telephone numbers of thousands of Colorado residents in their for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7.      Thus, while Defendants profit handsomely from their unauthorized commercial

---

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

listing of Plaintiff's and other Class Members' personal information, Defendants do so at the

expense of Coloradans' statutory privacy rights, under the PTFA.

8.      Not only is Defendants' misappropriation unlawful – it is also dangerous.  The

Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers'
> collection and use of consumer data. … [T]hey may facilitate the sending
> of advertisements … which some consumers may find troubling and
> which could undermine their trust in the marketplace. Moreover, …
> people search products can be used to facilitate harassment, or even
> stalking, and may expose domestic violence victims, law enforcement
> officers, prosecutors, public officials, or other individuals to retaliation or
> other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely
> [m]ay [c]reate [s]ecurity [r]isks[.][9]

9.      Plaintiff brings this action to prevent Defendants from further violating the

privacy rights of Colorado cell phone users and to recover statutory damages from Defendants,

pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10.      Plaintiff John Larancuent is, and has been at all relevant times, a resident and citizen

of Aurora, Colorado.  Plaintiff's cellular telephone number was listed by Defendants in their

directories, available at checkpeople.com and information.com, to advertise and/or actually sell

products and services.  Defendants never requested – and Plaintiff never provided – affirmative

consent, through written, oral, or electronic means, to such listings.  In fact, Plaintiff has no

relationship with Defendants whatsoever.  Plaintiff had never heard of Defendants and had no

reasonable ability to discover Defendants' use of his personal information until shortly before

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

filing suit.

11.    Defendant Checkpeople, LLC is a Delaware limited liability company with its principal place of business at 111 North Orange Avenue, Suite 800, Orlando, Florida 32801. Defendant operates the directory checkpeople.com.  Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

12.    Defendant Information.com LLC is a Delaware limited liability company with its principal place of business at 8875 Hidden River Parkway, Suite 300, Tampa, Florida 33637. Defendant operates the directory information.com.  Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

13.    On information and belief, Defendant Checkpeople, LLC is managed by Delaware corporation Slatkis, Inc.[10]  On information and belief, Defendant Information.com LLC is owned by Delaware corporation Slatkis, Inc.[11]

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d) *et seq*. in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies.

---

[10] *See* https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=forl-m17000009850-036b9b1c-e016-4a3b-b295-f4980149db1f&transactionId=m17000009850-eae31fab-6aaa-4c54-9a47-27f3b7278af1&formatType=PDF.

[11] *See Mannacio v. Information.com LLC*, No. 4:24-cv-01717-JSW (N.D. Cal.), ECF No. 13.

15.     The Court has personal jurisdiction over Defendants because Defendants regularly transact business in Colorado and a substantial part of the events giving rise to the claims asserted herein occurred in Colorado.  Defendants' tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendants know to reside in Colorado, without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in and was directed to this District. Venue is additionally proper because Plaintiff resides in Arapahoe County, Colorado, which is in this District.

## LEGAL AND FACTUAL BACKGROUND

### I.     Overview of Defendants' Directories

17.     Defendants are data brokers – companies "that collect consumers' personal information and resell or share that information with others[.]"[12]

18.     Specifically, Defendants provide online "people search" (also known as "people finder") services.  People search companies, like Defendants, specialize in compiling vast amounts of information about individuals from various sources.[13]

19.     Defendants and their competitors monetize said personal details through their

---

[12] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[13] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

20.      Defendants' directories are available at checkpeople.com and information.com. There, anyone on the Internet can view Coloradans' cell phone numbers, addresses, and much more.

21.      This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[14]



//

//

//

//

---

[14] Here and in the subsequent paragraphs, checkpeople.com is pictured first; information.com is pictured second.



22.    Users of checkpeople.com and information.com can also find people listed by last name (i.e., those with last names starting with the letter "A"):[15]



---

[15] https://checkpeople.com/search/i/A; https://information.com/names-by-letter/a/.



23.    After entering this information, checkpeople.com and information.com users are furnished a list of search results.  Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[16]  Checkpeople.com and information.com search results include searched individuals' cell phone number(s) and many other identifying details.



---

[16] Note, in these images of checkpeople.com's and information.com's search results, Plaintiff's counsel has redacted certain sensitive personal information (black portions).



24.    Upon selecting a particular person to investigate from the checkpeople.com search results, a checkpeople.com user can also access a free, more detailed preview of checkpeople.com's paid, full background reports.  The preview includes searched individuals' cell phone number(s).



25.    Checkpeople.com and information.com both make available paid, full background

reports that offer a comprehensive view into individuals' private details, including their cell

phone number(s).[17]

---

[17] Note, in these images of checkpeople.com and information.com's paid, full background reports, certain sensitive
personal information has been redacted (grey and black portions).  Defendants, themselves, do not redact said
information on checkpeople.com and information.com.

# PERSONAL INFORMATION

This section includes a full summary of personal information, including, but not limited to, full legal first, middle, and last name, known aliases, date of birth, age, phone number, current address and/or any other contact information.

## Overview



| Full name | Age | Date of birth/year | Other dates of birth |
|---|---|---|---|
| ██████████ | █ | ██████ | ██████ |

| Date of death | Current address | Known aliases | Gender |
|---|---|---|---|
| ███ | ██████████ | ██████████ | Male |

| Race | Hair | Eyes | Height |
|---|---|---|---|
| ████ | ████ | ████ | ██ |

| Weight |
|---|
| █████ |

| Interests |
|---|

## Emails ( 2 )

| # | Email | | Type | Dates |
|---|---|---|---|---|
| 1 | ██████████ | | Unknown | Unknown |
| 2 | ██████████ | | Unknown | Unknown |

## Phone numbers ( 1 )



██████████

Cellco Partnership Dba Verizon Wireless - Oh (Verizon Wireless)

Line Type : Mobile

Location : ██████

Dates : ██████

## Photos (0)

By viewing this PDF report, you agree that you will NOT use this report or CheckPeople.com's products or services to determine someone's eligibility for credit, insurance, employment, or for any other purpose defined and regulated by the Fair Credit Reporting Act (https://en.wikipedia.org/wiki/Fair_Credit_Reporting_Act). Specifically, you understand and agree that CheckPeople.com is not a "consumer reporting agency" as defined in the Fair Credit Reporting Act (15 U.S.C. §§ 1681, et seq.) ("FCRA"), which means that CheckPeople.com does not provide "consumer reports" as the FCRA defines. For a handy guide on how you can legally use CheckPeople.com, please visit https://checkpeople.com/company/dos-donts.



CONFIDENTIAL

# Personal Information

This section includes a full summary of personal information, including, but not limited to, full legal first, middle, and last name, known aliases, date of birth, age, phone number, current address and/or any other contact information.

## Overview

| Full Name | Date of Birth | Date of Death |
|---|---|---|
|  |  | N/A |

| Age | Gender | Hair |
|---|---|---|
|  | N/A | N/A |

| Eyes | Race | Weight |
|---|---|---|
| N/A | N/A | N/A |

| Height | Languages Spoken | Zodiac |
|---|---|---|
| N/A | N/A |  |

Current Address
, MA

Known Aliases
N/A

Interests
N/A

## Emails (9)

| # | Email | Type | Dates |
|---|---|---|---|
| 1 | @gmail.com | Unknown | Unknown |
| 2 | @ .com | Unknown | Unknown |
| 3 | @yahoo.com | Unknown | Unknown |
| 4 | @ .net | Unknown | Unknown |
| 5 | @ .net | Unknown | Unknown |
| 6 | @yahoo.com | Unknown | Unknown |
| 7 | @ .net | Unknown | Unknown |
| 8 | @ .com | Unknown | Unknown |
| 9 | @ .net | Unknown | Unknown |

## Phone Numbers (19)


( )  -
Line Type: Mobile
Location: , MA
Dates: Unknown

( )  -
Line Type: Landline
Location: , MA
Dates: Unknown


( )  -
Line Type: Mobile
Location: , MA
Dates: Unknown

( )  -
Line Type: Landline
Location: , MA
Dates: Unknown


**CONFIDENTIAL**

By viewing this PDF report, you agree that you will NOT use this report or Information.com's products or services to determine someone's eligibility for credit, insurance, employment, or for any other purpose defined and regulated by the FCRA (https://en.wikipedia.org/wiki/Fair_Credit_Reporting_Act ).

Additionally, you understand and agree that Information.com is not a 'consumer reporting agency' as defined in the Fair Credit Reporting Act (15 U.S.C. ÂÂ§ 1681, et seq.) ('FCRA'), which means that Information.com does not provide 'consumer reports' as the FCRA defines. For a handy guide on how you can legally use Information.com, please visit our Do's and Don'ts (https://information.com/dos-and-donts).

13

26.     As the above images of checkpeople.com and information.com make clear, Defendants knowingly list Coloradans' cell phone numbers. Checkpeople.com states: "Whether you want to verify the identity of the caller or learn if [a] number is connected to a landline or cell, CheckPeople.com is here to help."[18]  Information.com states: "One of the best methods to look up a cellphone number is using Information.com[.]"[19]  And Defendants do, in fact, provide phone numbers for what they correctly labels "[m]obile" cell phone numbers.

27.     Listing said information helps Defendants entice users to acquire access to Defendants' paid, full background reports.

28.     To acquire a full background report from checkpeople.com, a user can buy a one-month subscription for either $17.16 or $27.65, or a two-month subscription for $45.94.  On information and belief, full background reports from information.com are priced similarly. Users can also access 5-day trial memberships for approximately $1.



---

[18] https://checkpeople.com/blog/how-to-tell-if-a-phone-number-is-a-cell-or-landline/.

[19] https://information.com/latest/phone-number-lookup/how-to-lookup-a-cell-phone-number-for-free/.



29.     Thus, the listing of Plaintiff's and Class Members' cell phone numbers is for a commercial purpose.  Indeed, that is Defendants' entire business model.  Defendants are literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to their customers and subscribers.

## II.    Defendants' Conduct Harms Coloradans

30.     Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[20]  Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[21]

31.     In fact, individuals' private information has become such a valuable commodity

---

[20] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[21] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

that companies now offer individuals the opportunity to monetize their personal data.[22]

32.     These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data.  Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[23]  A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[24]  The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[25]

33.     Defendants' misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights.  It also deprives them of the real, quantifiable value of such data.

34.     Further, "[p]eople search sites … offer a wealth of information that can be exploited

---

[22] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

[23] *See, e.g.*, https://web.archive.org/web/20240420201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

[24] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[25] *Id.*

by malicious actors."[26]  For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[27]  Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[28]  This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[29]

35.    Information disclosures like Defendants' are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[30]  The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[31]

36.    Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[32]

//

//

//

---

[26] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[27] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[28] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[29] http://www.nytimes.com/2007/05/20/business/20tele.html.
[30] *Id.*

[31] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[32] *Id.* at p. 3.

## CLASS ALLEGATIONS

37.     Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on one of Defendants' websites (the "Class").

38.     Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

39.     **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable.  The disposition of their claims through this class action will benefit both the parties and the Court.

40.     **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class.  The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members.  Such questions include, but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

41.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed on checkpeople.com and information.com for a commercial purpose; Defendants did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendants' misappropriation of Plaintiff's personal data (including the economic

value thereof) came at the expense of Plaintiff's PTFA privacy rights.

42.     **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

43.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Finally, Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of the Prevention of Telemarketing Fraud Act,
### Colo. Rev. Stat. § 6-1-304(4)(a)(I)

44.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendants.

46.     Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a)   On or after September 1, 2005, a person commits an unlawful
> telemarketing practice if the person knowingly:
>
> > (I)   Lists a cellular telephone number in a directory for a
> > commercial purpose unless the person whose number has
> > been listed has given affirmative consent, through written,
> > oral, or electronic means, to such listing[.]

47.     Defendants failed to comply with this PTFA mandate.

48.     Defendants knowingly list Coloradans' cell phone numbers. Checkpeople.com

states: "Whether you want to verify the identity of the caller or learn if [a] number is connected

to a landline or cell, CheckPeople.com is here to help."[33] Information.com states: "One of the

best methods to look up a cellphone number is using Information.com[.]"[34] And Defendants do,

in fact, provide phone numbers for what they correctly labels "[m]obile" cell phone numbers.

49.     Defendants' websites, checkpeople.com and information.com, are directories –

i.e., an "electronic resource containing lists of information, usually in alphabetical order, for

---

[33] https://checkpeople.com/blog/how-to-tell-if-a-phone-number-is-a-cell-or-landline/.

[34] https://information.com/latest/phone-number-lookup/how-to-lookup-a-cell-phone-number-for-free/.

example people's phone numbers or the names and addresses of businesses in a particular

area[.]" *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/

definition/english/directory.[35]  Defendants admits as much, referring to checkpeople.com as a

"[p]eople [s]earch [d]irectory"[36] and referring to the "[i]nformation.com [p]eople

[d]irectory[.]"[37]

      50.    Defendants engage in this conduct for a commercial purpose.  The purpose behind

listing individuals' personal information – including cell phone numbers – on checkpeople.com

and information.com is to entice users to acquire access to Defendants' paid, full background

reports.

      51.    Defendants never request nor receives Coloradans' "affirmative consent, through

written, oral, or electronic means, to such listing[.]"  Colo. Rev. Stat. § 6-1-304(4)(a)(I).  Rather,

Defendants list the cell phone numbers of Coloradans they have never engaged with, have had no

connection to, and who are unaware of Defendants' existence.

      52.    Defendants' misappropriation of Class Members' personal data (including the

economic value thereof) came at the expense of Class Members' PTFA privacy rights.  It

deprived Class Members of the real, quantifiable value of such data.  And it exposed Class

Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted

---

[35] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

[36] https://checkpeople.com/search.

[37] https://information.com/.

telemarketing.

53.     Thus, on behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

(a)     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b)     Declaring that Defendants' actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c)     Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d)     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendants to comply with the PTFA;

(e)     Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f)     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g)    Awarding such other and further relief as equity and justice may
require.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.


Dated: December 18, 2024                    Respectfully submitted,


                                            _____/s/ Patrick H. Peluso_____
                                            One of Plaintiff's Attorneys

                                            **PELUSO LAW LLC**
                                            Patrick H. Peluso
                                            865 Albion Street, Suite 250
                                            Denver, CO 80220
                                            Telephone: (720) 805-2008
                                            Facsimile: (720) 336-3663
                                            E-Mail: ppeluso@pelusolawfirm.com

                                            **BURSOR & FISHER, P.A.**
                                            Joseph I. Marchese*
                                            Matthew A. Girardi*
                                            1330 Avenue of the Americas, 32nd Floor
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile: (212) 989-9163
                                            E-Mail: jmarchese@bursor.com
                                                        mgirardi@bursor.com

                                            *Admission to be sought*

                                            *Counsel for Plaintiff and the Putative Class*